Good morning, Your Honors. May it please the Honorable Court, my name is Sharon Rancourt and I am the Assistant Federal Defender representing Mr. Nolan Nishida. In this case, the government struck juror number 14 because he was male. The record, especially the audio recording, demonstrates that the proffered reason of flippancy was a pretext for discrimination. And I'd like to reserve three months, three minutes for rebuttal, if I may. Three months. You're going to appeal a best arrest, right? Three minutes for rebuttal. The court made two critical errors. First, the court failed to holistically evaluate the factors in Flowers v. Mississippi that this court reinforced in Irvin v. Davis that reinforced and broke no new ground under Batson. The district court also failed to perform the comparative analysis required at step three of the Batson determination. Second, the trial judge improperly relied on her personal opinion of the prosecutor formed over time and by making her determination in the shade of the umbrella of the judge's personal knowledge of the prosecutor. And that language in the shade of the umbrella is on page 10 of the district court's decision. As to the first issue, first and foremost, the audio recording clearly demonstrates that flippant, and the record as a whole, including the audio, demonstrates purposeful discrimination and that the court didn't do the required analysis under Flowers v. Irvin. The court must do a proper comparative analysis. The court must follow the bullet points in Flowers, bullet points which are unusual to see, and nonetheless are there to guide and to give us reason as a pretext for discrimination. As to that issue, there are six referenced bullet points, statistics. The court here didn't analyze statistics. The court made a cursory comment that what she had was a jury of twice as many women as men. If that was a statistical finding to justify her ruling on Batson, that's clearly erroneous. The veneer here of 32 had 17 men and 15 women. Prosecutor used all six strikes on men and an alternate strike also on a man. That means that the government struck 41 percent possible male jurors, none of the women. Hey counsel, I wanted to ask you about the standard of review we would apply in this situation. It the juror was flippant, and then we have whether or not the judge was correct or incorrect to use the shade of the umbrella. I think that's a good way to call issue two, I'll call it. As to issue one, the flippancy, now this court said clearly that it determined that juror 14 was indeed unusually casual or flippant. How do we review that? What's the standard? The finding of fact is reviewed under the standard of whether or not it's clearly erroneous, but in this case it is clearly erroneous if one follows all of the clues outlined in Flowers, especially if one does a comparative analysis. If we look at flippancy and we look at the tone or we look at the words used by juror number 14, we compare those side by side to what juror number 10 said and how juror number 10 responded. And this is where the audio is very important because the audio gives us tone and the audio actually gives us the words that were used. And in the audio, juror number 10, when she gave her number and she gave her brief biography, started out with what am I? She didn't know her number or the one before her 10. She said okay-ish. She said okay, I'll survive. If anything, the side by side comparison of juror number 10 and juror number 14 shows that juror number 10, if casualness or flippancy is an issue, was flippant, was casual, whereas juror number 14 wasn't. So had the court done that proper side by side comparison, and this court can do that here, this court can do that now based on the record, that finding that juror number 14 was flippant is erroneous. Let me ask you this, counsel. So let's assume for a moment, this is merely an assumption, just trying to get through the legal analysis here, that we don't find that the finding of flippancy was clearly erroneous. So let's say you don't convince us on that. But let's say that the shade of the umbrella comment, that that concerns us. So let's say one is okay, one is not okay. Is there any case law suggesting that if there was a legitimate grounds to strike a juror, but then there's something else that kind of muddies the record, like the shade of the umbrella comment? Do you know of any case law talks about harmless error or how we analyze that type of situation, where you win one of a case specific on the issue of the shade of the umbrella? If it's a legal, to the extent that it's an issue of law and it's a legal error, this court can review it, I would say de novo. But in this case, it's impossible to separate the other findings of fact or lack thereof from this shade of the umbrella. And taking into account Your Honor's comments, if Your Honor found that juror number 14 could be interpreted as flippant, if the court found that, that doesn't mean that it wasn't a pretext for purposeful discrimination. And that's where you do the comparative analysis. So compare juror number 14 to juror number 10. If flippancy was the reason for striking juror number 14, that reason would have applied equally to juror number 10. But the government didn't strike juror number 10, who was casual, flippant, jocular, forgetful, and apparently didn't seem to even initially want to be on the jury by responding okay-ish. So now we venture not into any reason or any plausible or possible, possible, reason. As Your Honor said, if you believed that juror number 14 was flippant, that must be compared against a comparable juror who wasn't struck. That's a clue to pretext. It must be measured against the other conduct in this case we raised. For example, the prosecutor disparately questioning men versus women. And I don't mean standing up and doing a voir dire to the entire panel, where people may or may not have raised hands that weren't documented on the record. I mean, the only juror that the prosecutor questioned significantly was a male. Counsel, let me ask you the consequences of if we were to agree with you, would this district court judge get another do-over? Or do we vacate the conviction and retry the defendant, Nishita? The court in Irvine sent it back for a do-over. That is one possibility that this court can do. Given that this is the second time this has come, however, up on appeal, the court got it wrong the first time on two grounds. First, it didn't make a finding of purposeful discrimination, and then second, didn't do a proper step three. Here again, with the benefit of the first decision and benefit of our briefing, got it wrong, got it wrong again, and now found another reason, and now came up with the shade of the umbrella reason. The court has already indicated that it's going to evaluate under that rubric, which is not permissible. Not what any of these cases say. None of these cases say that the court's personal opinion can now drive or obviate or abrogate the court's need to follow all of the other factors. So here, we have a record. We have a record that shows a statistical anomaly. We have a record that shows disparate questioning of the jurors by the prosecutor. We have a side-by-side comparison that even if this court were to think that juror number 14 was flippant, and we respectfully disagree with that, but juror number 10 was more flippant, more casual, it fails on the comparative analysis. We have some misrepresentations of the prosecutor on the record here. For example, informing the court that all the alternates were a male. Informing the court that she did substantial questioning, which wasn't true in terms of individual questioning. We had a situation where the prosecutor went to consult her notes with another prosecutor and with an agent, and couldn't come up on the spot with any additional reasons for why they were exercising their strikes. If we look at the issue of evidence of prior strikes, there's nothing on the record here specifically to talk about which cases, what types of cases they were, how they were decided, whether or not challenges were made. We don't have evidence of that to justify ruling in favor of the government. And we have other relevant circumstances, and in this particular case, it's a sex case, like Alanis, where it's not inconceivable that the government would want to strike men, believing that men would be more partial. There's too many clues to ignore. The record makes those clues clear, and this court can make that finding that purposeful discrimination did, in fact, occur. Thank you, counsel. You're over your time, but I'll give you a minute or two. May it please the court, good morning, your honors. My name is Margaret Naumar, and I represent the United States in this matter. Appellant now argues for the first time on appeal that the district court did not properly consider the flowers factors. But yet, Nishida never brought the flowers factors to the court's attention, not to the district court's attention, not to this court's attention on appeal, and when given a chance on remand, still didn't bring the flowers factors to the court's attention. And it makes sense that Nishida didn't raise the flowers factors with the court, because there's not much here for him to raise. Not all the flowers factors are present in the district court properly considered the relevant evidence and did not act inconsistent with Batson or with Flowers. As for the shade of the umbrella as defense refers to it, to answer your honors questions with that, Flowers states that the trial court may consider historical evidence of the government's discriminatory peremptory strikes from past trials in the jurisdiction, and the sixth factor in Flowers also refers to evidence that's consideration of other relevant circumstances that may bear on the issue. And so the trial court here had to make a credibility determination, which takes the genuineness of the person making the statement into account. This is not inconsistent with Flowers, and the point in Flowers and Batson is to consider all circumstances to really get to the heart of the prosecutor's reasons behind her strikes. And so it seems contrary to that purpose if we ignore evidence of the prosecutor's real intent when it's available. There's no doubt if a judge in that same courtroom had a prior on the record experience with the prosecutor acting in a discriminatory manner, that we would all agree that this is something that the court could consider. Now, so let me ask you this. As part of the court's explanation for its findings in this case, the court relied on prior experiences with the AUSA. Now, the court did say that the prior experiences stem from past court appearances as well as prior trials, but the district court wasn't specific that the court was really relying on experience with the AUSA's prior conduct during jury selection. Does that absence of specificity matter in this case? I don't think it does, Your Honor. And what the trial court said here... And it doesn't because we can infer that the district court was referencing prior experience during the course of jury selection, or even with that inference, they would be supporting case law. But that's a proper basis for the district court to rely on. I think the district court was relying on prior experience with that AUSA, and whether it was at jury selection or not, it was taking in the credibility of that prosecutor into consideration. Is there a case where district court can properly consider experience that's not tethered to jury selection? I'm not aware of a case. I would point out in the Ervin decision, I believe this court considered a New York Times article or discussed whether that New York Times article in which the prosecutor was making reference to... It was with regards to racial comments. I believe it was at jury selection as well. But this court considered that that might be something proper for a court to consider. So I don't think that would be any different for the district court here to consider on the record comments that might have been made by a prosecutor or demeanor by the prosecutor, where you can pull those same transcripts and refer to those on the same question I asked opposing counsel. We conclude that not clearly erroneous to say that the juror was flippant, but were bothered by the, you know, he's a quote good guy comment. I'm paraphrasing, but basically what the comment was. Do you have any authority that says we can, if there's one reason that justifies the strike, but then there's something else that concerns us, do we apply harmless error? What do we do in this situation? I would say I don't have a case to cite to, but we did cite to some Seventh Circuit cases in our brief. In those cases, the Seventh Circuit appellate court has taken into consideration prior patterns of practice of a particular prosecutor. And that's exactly what the AUSA was, that she was sincere and forthcoming and explaining what was behind her strikes in this very case. And that's what those Seventh Circuit cases hold, I think, is that you can take into consideration the patterns and practice, but you also need to look at this case. And the court was clear in its order that it was considering the AUSA in this very case. So how do you explain the statistical evidence where the prosecutor struck 41% of the male prospective jurors and zero of the female prospective jurors? Yes, Your Honor. In this case, I think the statistical evidence, there just really isn't much statistical evidence here, like in the Flowers case. In Flowers, there had been six juries with a significant amount of black jurors that were struck each time. Here, we only have one jury selection, and all we have is the fact that the government struck six male jurors and one alternate out of a total of 17 male jurors. So the numbers really don't speak loudly or get you very far in this case. And the district court found that all of the reasons given by the government for having gender-based reasons. And defense doesn't even argue that those reasons, the legitimate non-gender-based reasons, weren't appropriate. I think they do. I think they argue a comparative analysis, say, between juror 14 and juror 10 would show they were equally so-called flippant. And so when you look at the comparative analysis, the district court did do a comparative analysis in this case. And I disagree with the defense's articulation of juror 10 being casual. When she was stating her jury number, she was simply trying to recall, oh, what number am I? I'm 10. Whereas, juror number 14 didn't even state his juror number whenever it came to him to be casual or flippant at all. Whereas, juror 14 used the word, how's it? Which, as the district judge said, she's never had anyone address the court with how's it in all of her time on the bench. So juror 10 and juror 14, there just is no comparison there. The female jurors, none of the female jurors addressed the district court with slang like juror 14 did. And those jurors gave detailed answers to the court's questions. As for the second factor, there simply is no evidence of disparate questioning here. Nishida, in fact, admits that he doesn't believe that the government even used their time to individually question jurors. And the one juror that was individually questioned was a female. And the district judge said, you can specifically single out that juror to have him answer the questions that weren't previously asked because he was in the main pool of jurors. So the second flowers factor, there just simply isn't disparate questioning by the prosecutor here. As for the misrepresentations on the record, the fourth flowers factor, the prosecutor did not make misrepresentations on the record. Defense points to saying that the prosecutor said she used a pretty good amount of time and compares that with the entire day of jury selection. But if you look at the record, and it's specifically at excerpt of record 130, the district court only permits 10 minutes of individual voir dire per side in this case. That is her trial practice. And so if the prosecutor conducted five minutes of her allotted 10 minutes of voir dire, I think it certainly seems fair to say that that's a pretty good amount of time. So as for that fourth factor, there just simply are not misrepresentations on the record. And the defense cites no support that the government is supposed to make a contemporaneous record of jurors' body language at the time that they're conducting voir dire. The defense agrees that the fifth factor isn't applicable here and it doesn't point out any further factors. So I think the district court properly considered the flowers factors and Batson in this case addressed the evidence that was raised by the defense and brought to its purposeful discrimination and that finding is entitled to great deference and wasn't clearly erroneous. And we would ask that your honors affirm the district court. Unless you have any other questions, I see my time is up. Thank you, counsel. I'll give you two minutes. First of all, flowers is precedent and precedent is precedent whether we cited it or not. And it broke no new ground. It merely reinforced Batson, as did Irvin, which was decided at a later stage, which was decided but presented before flowers came down. And that is why in Irvin, there is a remark in Irvin, again, that flowers broke no new ground, merely reinforced what Batson tells the court it should do when evaluating pretext. Now, this issue of personal opinion is erroneous, but it's also, venture to say, dangerous because the personal opinion of a prosecutor is allowed to stand as driving and shading the court's opinion or analysis of other factors. And we can't extricate it here. The court said it. We're not guessing this. We're not inferring it. The court wrote that in her opinion. Then why have Batson? Why have those bullet points and flowers? It would be enough for the judge or the group, the lower court, just to simply say, I know this prosecutor. I've seen this prosecutor on numerous occasions and they're a stand up person. And therefore, I'm not going to doubt or second guess their motivations. And when we talk about Batson, we are talking about a motivation. We're talking about a pretext. And in order to get at that, which is difficult because you're getting at what's inside somebody's head, something that you can't necessarily see in the person's head, and you need to look at that against the clues that are laid out in flowers. And that's why they're there. And if the court does that, if this court does that, this court can see that in light of all those factors and in light of the type of case, it was pretextual. This court should remand for a new trial. And that's what we're asking to do. Thank you.
judges: WARDLAW, NGUYEN, OWENS